The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Okay, why don't we begin with Ms. Norris. This is on the first case of Bowman v. Stirling. Thank you, Your Honor. May it please the Court. This is a capital case where Miriam Bowman was sentenced to death following convictions for murder and arson, third, in Dorchester County, South Carolina. The state's case was built primarily on biased witnesses with strong motives to lie. There were multiple people charged in the case, including family members. Seven people were charged, five testified. The conviction and death sentence were also based on the state's nondisclosure of evidence despite claiming an open file policy. The solicitors explicitly said on the record that he, several months before trial when they were arguing motions, that he had an open file policy and anything else and that the defense had already looked at anything else that came in that he would fax it over immediately. That is in the district court docket number 11 at pages 76 to 78. Despite claiming an open file policy, the solicitor did not provide all of the information that was available. There were three primary witnesses for the state. One testified to being a direct witness to the murder, the actual shooting of the victim. He also provided aggravating details about her saying that she was scared, pleading for her life, and saying, please don't shoot me, I have a child. The second- Counsel, I think we're fairly familiar with the record. If you want to move directly to your legal arguments, that might save you some time. Yes, Your Honor. Of course, with respect with a Brady claim, we must address whether it has been suppressed. In these particular issues, particularly with respect to the mental health report of Tywan Gadson who testified about the murder, Mr. Gadson was examined in his own case as he was charged with murder on a confidence evaluation. A report was provided, and that was not provided to defense counsel despite the solicitor admitting in post-conviction that it did contain impeachment value. The state court and the district court said that there was no suppression of that because the defense could have discovered that by due diligence. We submit that there is no due diligence requirement under Brady. Banks v. Drapke makes clear that a rule that says a prosecutor may hide and a defendant may seek is not tenable in a system bound to afford defendants due process of law. Explain to me how you believe that that mental report would be used at trial. Well, Your Honor, it included specific... I know he had seizures and maybe some memory failures, but how would a lawyer use that at trial to cross-examine the witness? Well... We're talking about Gadson, right? Yes, Your Honor. You would do that basically as the post-conviction counsel did. Gadson testified in post-conviction. He was asked, do you have memory problems? Did you say this to him? I understand, but when he testified to things that he did remember, the question is the most that could be happening, he'd leave something out and he wouldn't know about that fact. There was no suggestion or no circumstance historically that was alluded to that could bring this to light. In other words, this was not something where he said one thing and then says, oh, I forgot or whatever. He did recant with respect to the Sam memo, but that's another issue altogether. I'm just trying to figure out how you would use it and how it would be to effect. I mean, he was cross-examined on his alcoholism, wasn't he? Well, he was cross-examined on being drunk that day. But, Your Honor, in the... The obvious thing wouldn't have been in a seizure. Maybe. Well, there's no evidence from anybody or anything that suggests that. I mean, these are intermittent when they happen. And I think a person who's in such a seizure is... I guess they know that they are in it, but... Well, Your Honor, I would submit that if you are blacked out, you don't know when you're blacked out. But then you won't testify to something that you didn't witness. In other words, he testified to witnessing something. If he's blacked out, the only argument would be he fabricated it. But he was there and functioning and there was a continuum of historical conduct. I just wonder how it would be used. And it seems to me the most powerful aspect would be some kind of drug or alcohol dependency. But the drugs was marijuana. There's no suggestion he was under influence then. There was a suggestion he was under the influence of alcohol, I guess. That suggestion is missing, Your Honor, because the defense didn't have the report where he admitted that he smoked six months of cannabis a day. You add that to the alcohol, it's a different picture. Why is it different? I mean, if he's high on cannabis, what's the indication there other than the same indication that he's intoxicated? Your Honor, I submit... I mean, we're talking about, you know, a materiality affecting a trial and anything adverse. I'm suggesting that in this argument, we assume that there were non-disclosures under Brady with respect to the Sam memo and the pending charges on Johnson and this mental aspect with respect to Gadsden. Let's start with that. But the real question comes, how would a lawyer representing Bowman have used it? And how would that have affected the trial, if at all? Well, Your Honor, it's more than just the trial. The court also has before it, because Brady is a sentencing case itself, even if it's not material for the trial, it can be for the sentencing. And we certainly submit that Bowman was denied the fair trial, but also the fair sentencing. But in addition to the impeachment value that could have been used from the mental health report, there is, of course, the Sam memo. And the state court there, along with the district court, essentially said that it was enough that the defense had a Davis note. But there are material differences in the note that Davis himself wrote. Counsel, let me ask you how this helps you in view of the testimony at several places from trial counsel who represented that he would not have called Gadsden even with this because it was too dangerous. That he would finger Bowman as the person who had him write it and that that would conclusively convict his client. And he answered several questions about being in the same boat, whether he had the memo or not. I'm having difficulty understanding, you know, based on particularly on the testimony of trial counsel, how this could have been material, particularly if it wasn't going to be used. Well, your honor, he also testified based on the memo that was suppressed. It included information that Davis had said that Gadsden confessed to being the killer in front of at least four to five other people. We can all read what that says, but still you have his testimony that knowing all that I couldn't take a chance of using it. Well, I couldn't put him on for that. Your honor, he was referring specifically to Ricky Davis, but he testified explicitly that he would have investigated further if he had had that. But he also testified that even with the memo, he would not have put him on. He said he for purposes of that decision, the memo didn't add any. He had the note and exactly what Judge Agee is pointing out. And it's pretty obvious it's a it's a it's a real risky proposition to put somebody on who said I was told by the defendant to help him out and to confess. And I just did it for that purpose. And I recant. That's not true. And it actually was him. And I saw him. I mean, that's pretty well, I see as a lawyer. Well, your honor, I submit that that is what a reasonable lawyer would have done in this situation. And a lawyer and what a lawyer said, the actual lawyer said he would not have used it. It's not even speculation. We have direct evidence on that. Uncontradicted. Well, your honor, I think it's also uncontradicted that he said that he would have investigated further and look for other witnesses. Well, let's assume every one of those witnesses was told by Gadsden that he did it. I mean, Gadsden comes back and says, yeah, I did that, but I did it because the defendant told me to and I was trying to help him out. And the truth of the matter is, it was he who shot and I witnessed it. I mean, it's dynamite. At that point, your honor, it's for the jury to decide. Yes, all these ifs ands and buts may have happened, but the defense would have had all the available information. The jury could have made the decision. And again, we're not just talking about the result. I'm assuming the purpose of the discussion here that there was a nondisclosure that fulfills Brady's first prong. The real question I'm focusing on is the three things that you focus on. Would they have made a difference in this case? And it's it's it's quite a push. I mean, I really want to hear what you're saying on that. But that to me is where the rub is in the case. What we have to decide. It certainly could have made a difference in sentencing. It is clear that, yes, Marion Bowman may well have still been convicted of murder and arson if everything went the wrong way. Counsel, let me ask you specifically about sentencing. Where was that argument made below? Your honor, I submit that it's included within the Brady argument itself. When you argue he didn't get a fair trial, you're automatically including sentencing because without the trial, there is no sentencing and Brady. You never you never made a specific argument as to the effects on sentencing. Is that correct? I think that that's correct. Your honor. The post-conviction counsel was focused on guilt, innocence. But again, Brady itself banks is both of those cases are cases where fair trial was asserted. The courts rejected materiality for guilt, innocence, but found materiality and reversed the sentence. Right. But that that's a different issue as to whether a claim as to sentencing was raised in those cases, as opposed to here where there's no certainly there's no explicit reference in the lower court that a claim is being made as to sentencing. There is no explicit reference. But as I said, Brady itself is a sentencing case. It was played out. We're on sentencing now. And the question is, you're going to try to do the same thing. You might get the jury even angrier because the guy's more culpable. Now you have a defendant who is not only committed murder, but is covering up by directing his colleague. In other words, I'm not sure that it makes your client more sympathetic on sentencing than it did on the guilt base. Your Honor, there is another aspect of the Brady claim, and that is respect to Hiram Johnson, who the solicitor argued had no motive. He's the one witness that that the solicitor says no motive to lie in this case. And he had pending charges in front of the same solicitor that were never disclosed. They're not even on the rap sheet. The fact that he's charged affects his credibility. How do you get that in? In other words, somebody charged and he's falsely charged or he's presumed innocent. You're going to say he's lying because he's been charged or imply that you can always impeach a witness with bias for any motive and having pending charges. Would a court let in information about pending charges on which there's been no adjudication of any kind? I submit in South Carolina, yes, you can cross-examine a witness based on motive to lie and pending charges where you want to please the exact prosecutor that is questioning you in the courtroom. Excuse me. He had charges of receiving stolen goods, burglary second, and grand larceny. So he faced up to 15 years on just the burglary second. So, Your Honor, I submit that it could very well make a difference in sentencing as the solicitor relied on his testimony there fairly heavily. I see my time is up. OK, I think we understand your points, though, but you do have rebuttal. We'll come back, come back to you. OK, Mr. May. Thank you, Your Honor. May it please the court. Your Honor, under Brady, it's a simple test. You have to demonstrate that there's favorable evidence that is either exculpatory, impeachment-based, or mitigating. Well, I gather here, just to cut through it all, we have three aspects that were not disclosed, and the defendant basically says they affected either his trial or his sentencing. So why don't you start off on that platform? Certainly, Your Honor. On that platform, there's three different claims of Brady. Two of them do not provide evidence that the state suppressed the evidence in question. All three fail on the question of materiality. Now, jumping first to the Haram-Johnson charges, that is the only claim in this case that has been found, reasonably so, by the ECR court and the federal courts thus far, that there was a suppression of the evidence in question. And that is the case. Charges like these should have been provided to the defense. However, looking at the record, there's a couple of reasons why you cannot get even close to finding that this would be material for purposes of reasonable probability of a different result at trial. First, if you read the record closely, there was an arrest warrant out for Mr. Johnson, but he was not even arrested until after he had already helped the police with information in the case. He provided a full statement to police demonstrating what had happened that night, what he had seen on April 5th, but he wasn't arrested until May 29th. So the argument that the defense could somehow use that information to chip away at his credibility, that there might be some basis for bias because he has pending charges, is dwindled considerably when you say, well, he was already helping the police before he was ever even arrested. So that, number one, goes to materiality because it would demonstrate to the jury that he might have pending charges, but he was helping before him. The second is, if you look at the evidence in this case, there's just no way to get to materiality. You've got three different witnesses that demonstrate a petitioner gave his intent to kill a victim. You've got a witness that solved the crime. You have three witnesses that heard him confess, and you have a witness that saw him dispose of the body. Counsel, is this your overwhelming evidence argument? Yes, this would be the overwhelming evidence, and it would go to all three of these claims. But you've got three different witnesses that either heard him confess, saw him do it, or saw him get rid of the body and the car. And the coup de grace of all evidence in this case is that Bowman's own family members disposed of the gun by throwing it over the Edisto River. And that gun is only in this case as evidence because they helped police conduct an underwater dive to recover the murder weapon that matched the bullets found in the shell casings at the scene. There's no way to get beyond that. There's no way to demonstrate a reasonable probability of a different result when that is the evidence you have. Counsel, am I correct? This is the case where the defendant's sister testified that he said he was going to kill the victim the day that she was murdered? Is that correct? That's correct, Your Honor. There's actually two different sisters, Kendra and Yolanda, that said basically the same thing, that they heard practically the same thing out of his mouth that day. Your Honor, moving to the San Memo, Brady requires the disclosure of information, not explicit specific documents. And in this case, the defense had the information that is pertinent from the San Memo. That being that supposedly... Is this an argument that you didn't violate Brady in failing to disclose? Shouldn't that memo have been disclosed? We would argue not, and we would argue that the findings of the PCR court and the magistrate and the district court finding to be reasonable, that it was not suppressed. But it wasn't turned over, was it? It was not turned over, but the failure to turn over does not equal suppression for purposes of Brady. Why? Because Brady requires the evidence to be either exculpatory or impeachment or mitigating. And in this case, the information that is exculpatory or impeaching from the San Memo was in the handwritten note that had already been turned over. There was more in the San Memo. There was other people involved that could lead to investigations and so forth. I think you're picking your hardest problem. Well, Your Honor, I would argue, and based on the rulings of the prior courts, the information that's additional in the San Memo is the context in which Bowman said, hey, write a handwritten letter saying what Gadsden confessed to. None of that would be exculpatory for Bowman. It's just Bowman's comments. Counsel, if we assume that the San Memo was suppressed, what's your argument then? If the court were to assume that the San Memo was suppressed under Brady, you're still fighting a ridiculously uphill battle on materiality. Because the nature of the evidence in question simply doesn't provide the defense much at trial work to be used. Mainly because I argue that all of the exculpatory impeachment evidence from the San Memo was already in the defense's possession. They could have cross-examined Gadsden on whether he supposedly confessed to Ricky Davis. And as the court pointed out, Ricky Davis recanted his testimony. The defense actually took efforts to further investigate this supposed confession from Gadsden by going to Ricky Davis. And if they claim they want to find those other four or five people that supposedly heard this confession, the fact is when they tried to investigate this part of this particular evidence, they met a brick wall in Ricky Davis saying, none of that's true. Your client told me to make it up. So it's not that there's nothing that really prevented them from getting anything, because as far as their witness is concerned providing this information, there is no information. But nonetheless, they still had the handwritten note, and they could have used that at trial for purposes of cross-examination to simply ask Gadsden if he confessed. And as the court had already pointed out, it is a stick of dynamite to call Ricky Davis and try and go any further than that with the risk of demonstrating that their own client asked him to make up some of this information. And ultimately, the PCR court's findings to those facts and the application of law in this matter were reasonable. And that is really the only question that this court is here to decide, was the federal law applied by the PCR court. On that point, counsel, there's been a little discussion about cumulative materiality. Is that something that we would need to address? And if so, would we review that for unreasonableness, or would we have to review that de novo? What's your position on that? Certainly. As the current holdings stand, there's only one claim that was found to be suppressed by the courts. With that being the case, there isn't a cumulative effect argument to be made because there's nothing to accumulate. Why don't you assume as the question was postured, which is there is an argument that it was cumulative. And the question is, how do we address it? Because it's basically an additional argument, isn't it? Certainly. And if this court were to find that one of the other two claims was a suppressed piece of Brady evidence, then you would have a cumulative argument to consider. But you're still left with a de novo review and a materiality argument that's just not going to cut mustard. If you look at these three pieces of evidence, they don't provide the defense, much of anything, to get to a jury to suggest that the evidence they heard of guilt would somehow corrode the verdict they reached. And, Your Honor, just to... So, counsel, is the bottom line of your answer there that the evidence is overwhelming, and therefore the cumulative effect is insufficient to undercut the verdict? I mean, I'm not exactly sure what you're arguing there. Certainly. There is overwhelming evidence in this case, massively overwhelming evidence in this case. And if you're looking at these three individually, they fall well short. But even if you're adding them all together, even if you add all three together, they don't collectively, cumulatively, provide that much for the defense. You're talking about a SAM memo where the information in question was already provided, but all it really does is, by cross-examining Gadsden on whether he had a confession, he's going to deny it, presumably. That's pretty much the end of that explanation, because counsel said he's going to be in the same boat with his Ricky Davis witness, saying that he's going to recant and demonstrate that his client hadn't made it up. If you look at the Hiram Johnson charges, you're talking about a witness who didn't see the crime and didn't see the disposal of the body, but heard a confession and demonstrated that he saw Bowman with the stolen car and with the gun in his lap. If you're telling the jury, hey, you shouldn't trust this individual because he has pending charges, but we have no evidence that he's receiving any kind of a deal, they're still not getting anywhere as far as demonstrating to this jury why there is not enough evidence to convict Bowman. And to the third, the Gadsden mental health report, as this court pointed out, how it could be used, the answer is to very little extent. There's no evidence that Mr. Gadsden was under the influence of cannabis at the time of this crime, and the cannabis doesn't really go so much to credibility as it would just character. We want to call this guy a cannabis head, so maybe the jury won't like him as much. The other evidence in the mental health report says explicitly that there is no memory impairment other than verbal memory, and a brief search just demonstrates that you don't always remember what you're told under that circumstance. That is not going to convince the jury that they shouldn't trust Gadsden because he witnessed and could describe in detail how a murder took place along the street on Nursery Road. That's not going to erode anything in the eyes of the jury. All of that collectively put together doesn't provide any kind of evidence that would erode the confidence of the verdict in this case. So, cumulatively or independently, you're still falling well, well, well short of that. And your honors, I would just add, I haven't spoken a great deal on the Gadsden mental health evaluation. There's been some argument in this case that Banks stands for the premise that there is no due diligence standard to be placed on counsel. Banks does not stand for that. Banks' decision, as this court has found in multiple cases, originally in U.S. v. Kelly, then Fullwood v. Lee, and then again in U.S. v. Maximo, Cantone, George, and Hicks. This court has never found Banks to be a controlling authority that there is no due diligence equal opportunity. Yeah, but now you're suggesting that the defense counsel should, with respect to all the government's witnesses, somehow start searching for mental health reports or other types of things. The principle of due diligence really focuses on the notion that counsel, a prudent counsel, would normally engage in the investigation and discover the information. But I think the Supreme Court is pointing out that there's a certain limit to that, the breadth of that, the idea that you have to go hunting around when there's a constitutional duty to disclose is the message that's being conveyed. Well, your honor, I would respond in a couple of ways. First, in this case, this is not evidence that an attorney would have to go snooping around to find out that he exists. His own client had been subjected to the same mental health evaluation just a couple of months before, and it produced a multi-page report of Bowman's, obviously his mental evaluation, but also how he interprets things that took place that day. If an attorney is holding that kind of document in his hands for his own client and recognizes that there is a co-defendant charged with the exact same crime and for the exact same charge, it should dawn with under due diligence that that type of evidence probably exists for the co-defendant as well. So you have a 10-person conspiracy, and you're suggesting that counsel should be going around looking for the mental health records of the 10 conspirators. It would be under due diligence looking to see if such a report had been ordered, and that could have been easily determined by simply opening the Gadsden case file at the clerk of court's office. I don't know how many cases you've represented defendants and engaged in that kind of... I mean, when you're in a capital case, it's intense, it's a lot of work, and the notion that you have to start doing background checks on every witness and every co-defendant when the government has it right in its file, that's a pretty heavy load to carry, argument to make. Your Honor, it could be cumbersome in some situations. In this situation, it's not particularly cumbersome. This was the only eyewitness to the case, and if defense counsel is doing his job, he would, I think, take at least limited efforts to look at that case file and see if he documented... Counsel, that seems more like an ineffective assistance of counsel argument that post-conviction counsel would have raised. I don't think they did, but that's different from whether or not there's a failure to disclose. Yes, Your Honor, it could be couched in that way, but it goes back to equal opportunity of finding the evidence. If you look at, and this is certainly not a mandatory ruling or anything of that nature, but if you look at the Wright and Miller Federal Practice and Procedure, they actually list under Brady materials that evidence equally available to the defendant by exercise of due diligence means that the government is not obligated under Brady to produce it. Then they provide the footnotes, all the circuits that have held to that kind of ruling, and you've got the 11th Circuit, the 4th Circuit, the 8th Circuit, the 9th Circuit, the 7th Circuit, the 5th, and the 6th Circuit have all had cases that have reached that kind of ruling, and I would point out that while the defense relies on the 3rd Circuit reaching a different conclusion, it did not reach that conclusion as a result of banks. It reached that conclusion in 2016 after producing multiple opinions that demonstrate that it held that rule after banks that came out in 2004. Counsel, if we assume the Gadsden Mental Health Report was suppressed, what's your materiality argument there? There's practically no materiality at all for the Gadsden Report. As we've discussed, demonstrating someone that smokes cannabis doesn't demonstrate a lack of credibility when the evidence shows that he wasn't under the influence of cannabis at the time. For a guy, for the rest of the report, it says, well, he suffered seizures and blackouts. Well, the report also demonstrates that that was only three times, and none of those three times were the day of the crime. And if we want to talk about the hearing of a beeping noise or hearing a voice, that doesn't demonstrate a lack of memory or an inability to tell the jury what he saw that day, and there's no findings in that report that demonstrate Gadsden is coming under the influence of grand delusions and seeing things that aren't happening. There's nothing in that report that truly takes Gadsden's credibility out of the minds of the jury. Now, he was cross-examined for the purpose of saying, hey, I was drinking that whole day. And that, as the court has pointed out, is far more effective than demonstrating that he likes to smoke weed. And that's far more helpful than demonstrating, well, he heard a voice and hears a beeping noise. He's in prison. Some of those things might actually be true. We don't know. But it doesn't demonstrate that there's a lack of credibility for Gadsden. And for all three of those issues, materiality is lacking to a substantial degree. And for that reason, the finding of the PCR court that was reasonable in both fact and law, and the judgment the conviction should stand. Thank you, Mr. May. Thank you, Your Honor. Ms. Norris. Thank you, Your Honor. Mr. May, please, the court. Mr. May addresses repeatedly the trial outcome. He never got to, even if Mr. Bowman still would have been convicted, would the sentence have been the same? I submit, as Judge Rushing asked, the cumulative nature of the suppressed items must be considered, not only to the trial, but to the sentencing itself. Here you have Gadsden, the only witness who says that I saw Mr. Bowman shoot her. It is clear, based on all of the evidence, that it is just as likely that Gadsden was the shooter and Bowman was the accessory. Gadsden was the star witness, and it's more than just is his memory impaired. Number one, he has a motive to lie. It's already in the record that he was charged with murder, could have been, the state could have sought the death penalty. He got a deal for a maximum of 20 years as opposed to death or life. You add to that. He has the motive to lie. But even assuming that the jury would have found him truthful, it's more than just are his memories complete. Let me ask you something that's more fundamental before you leave. I've been wanting to ask you what your view on this is. The state court, PCR court, addressed your claims on the merits, going through and providing explanation. And the standard when the state does that is a very high standard for us. Basically, Congress and the Supreme Court have told us to lay off if the state has decided it. And the only way we can reverse a finding of fact is if it's off the wall, so to speak, even if we disagree. And as you know, they beyond any possibility for fair minded disagreement. So it's not a disagreement on what they did. It's the notion that nobody could reach that conclusion, so to speak. How do we how do we address the PCR court? And what are you making the argument that they basically were out of bounds? Your Honor, the post conviction court did adjudicate for purposes of 2254 the question of materiality as to the trial. The court did not address sentencing. And because of that, Johnson versus Williams and Wiggins, Wiggins says that if the court does not address the prejudice or materiality. Was it presented to the PCR court, the sentencing? Again, Brady is a sentencing case. You can. No, that's not my question. My question is, was that argument presented to the PCR court? Was it explicitly argued? No. But it would affect the sentencing. In other words, materiality is a big part of the Brady. And the question is, in arguing materiality, did counsel argue to the state court that it would have affected the sentence? No, Your Honor, they did not. But I submit that that is included in the question. And here, this is not a high. Yeah, but the counsel, the cases that you reference, including Brady, I mean, it was clearly sentencing was specifically raised. And that seems to me a fairly significant distinguishing factor here is you're using cases where sentencing was the issue. And if it wasn't raised to the PCR court, I don't think that you can expect them to address it sua sponte. Even assuming that EDPA applies, 2254 deference applies, this is not a highly aggravated case. The state only used the trial evidence and the testimony of which Johnson, the man who had pending charges, and yet the state said no motive to lie. He's the person that says that Bowman confessed to this murder laughing. That is a centerpiece of the state's argument in sentencing that Bowman is a cold-blooded murderer. He enjoyed killing, et cetera. There's only the trial evidence. There's victim impact and nonviolent prior convictions, as opposed to the mitigation of this is a 20-year-old kid, essentially, without a whole lot of aggravation. And in South Carolina, this jury, as every jury in a capital sentencing, was instructed you can give life for any reason or no reason at all, just as a matter of mercy. Certainly, I submit, this would have made a difference to sentencing, even under the EDPA standards. I see my time is out. Thank you. Well, thank you very much. I think these arguments were well presented. And our practice, as you know, would be to come down into the well of the court or into your rooms and shake your hands. But, you know, Star Trek, we used to beam people around. Maybe we'll come around at some point and be able to beam ourselves to you and shake hands. But we'll have to – for now, we'll have to just thank you for your arguments and welcome you to the Fourth Circuit and hope you come back.
judges: Paul V. Niemeyer, G. Steven Agee, Allison J. Rushing